**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:10CR387 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| JAMES C. DIMORA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendant Michael D. Gabor for release from detention pending sentencing. (Doc. No. 893). The government opposes the motion. (Doc. No. 898).

*Background*

On March 9, 2012, after a 37 day jury trial, the jury returned nine guilty verdicts against Gabor contained in seven of the eight counts in which he was charged. He was acquitted by the jury on one count. The charges of which Gabor was found guilty included: RICO conspiracy, conspiracy to commit bribery concerning programs receiving federal funds, aiding and abetting bribery concerning programs receiving federal funds, conspiracy to commit Hobbs Act extortion, conspiracy to obstruct justice, conspiracy to commit mail fraud and honest services mail fraud, and aiding and abetting mail fraud and honest services mail fraud. (Gabor Verdicts, Doc. No. 739). Gabor's co-defendant, James C. Dimora, was found guilty by the jury on 33 of the 34 counts in which he was charged. He, too, was acquitted by the jury on one count. (Dimora Verdicts, Doc. No. 738.)

Immediately following the verdict, the government moved to revoke the bonds of both defendants, and the Court conducted a bond revocation hearing. At the hearing, Gabor's counsel offered argument, emphasizing his client's close familial and community ties, and noting particularly that "Mr. Gabor has lived in the same house with his mother and his wife and his son for 52 years, Your Honor. They're in Parma. He isn't going anywhere." (Bond Revocation Hearing Transcript, Doc. No. 756-1 at 10, Page ID # 17312.) Counsel also highlighted his client's compliance with the terms of his pre-trial bond, as well as his appearance at every court proceeding. (*Id.*)

At the conclusion of the hearing, and after meeting with a representative from U.S. Pretrial Services, the Court granted the government's motion, and remanded both defendants into the custody of the U.S. Marshals. In revoking bond, the Court determined that it could not make the requisite finding by clear and convincing evidence that the defendants would not pose a flight risk. In reaching this conclusion, the Court emphasized the fraudulent and obstructive nature of the crimes for which the defendants had been convicted, as well as the deceptive behavior underlying these convictions. (*Id.* at 16-17, Page ID # 17318-17319.).

Through the present motion (filed more than two months after the bond revocation hearing), defendant Gabor moves for release from detention pending sentencing.[1] Gabor's sentencing hearing is scheduled for July 25, 2012. In support of release, he reiterates his compliance with pre-trial bond conditions, his timely

---

[1] In a decision dated April 23, 2012, the Court denied co-defendant Dimora's motion for release from detention. (Doc. No. 867.) Due to the similarity of the arguments advanced by each defendant and the crimes committed by each defendant, as well as the shared circumstances surrounding the commission of these crimes, much of the same analysis that was applicable to co-defendant Dimora's motion applies to the present motion.

2

appearances in court, his "lifelong ties to Cuyahoga County," and the fact that he has "lived in the same house with his mother for his entire life. He has a wife and son that also live at the same address." (Doc. No. 893, Page ID # 18463.) He also requests a hearing.

*Discussion*

The Court begins with Gabor's request for a hearing. The Court has already conducted a hearing in this matter, at which time defendants were free to offer any evidence or witness testimony in support of their requests that their bonds be continued pending sentencing.[2] The matters of which Gabor would now like to offer evidence—his ties to the community, his close family, and his compliance with the terms of his pre-trial release—were all raised by counsel and considered by the Court before it rendered its decision revoking bond. Having already considered all of these facts, and having given defendant Gabor the benefit of the truth of these asserted matters, no *additional* hearing is necessary.

Gabor seeks release pending sentencing pursuant to 18 U.S.C. § 3143(a)(1), which provides:

> (a)(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence…be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

---

[2] At no time during the hearing did counsel for either defendant seek to, or request leave to, offer witnesses or evidence on the subject of bond pending sentencing.

3

The statute creates a presumption in favor of detention, *United States v. Poulsen*, No. CR2-06-129, 2008 U.S. Dist. LEXIS 112879, at *5 (S.D. Ohio April 7, 2008) (quoting 27 *Moore's Federal Practice* § 646.13 (Matthew Bender 3d ed.) ("[T]he Bail Reform Act creates a presumption in favor of detaining a convicted defendant pending sentence or appeal.")), *see United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (quotation and citation omitted), and the defendant bears the burden of proving by clear and convincing evidence that he does not pose a danger to the community and that he is not likely to flee. *See Vance*, 851 F.2d at 169 (quotation and citation omitted).

      Gabor claims that his "lifelong ties to Cuyahoga County" and his close relationship with members of his immediate family support a conclusion that he is unlikely to flee. The Court disagrees. The evidence at trial established that Gabor used his contacts and "lifelong ties" to the community to further the conspiracies of which he was convicted, including the rigging of a county election, the attempted fixing of his civil action in domestic relations court, and the cover-up of certain federal crimes committed by him and his co-conspirators. As was the case with co-defendant Dimora, extensive trial testimony demonstrated that Gabor committed his crimes with people whom he considered to be close, long-standing friends. The Court finds that his "lifelong ties" to the community, therefore, do not support the conclusion that he would be unlikely to flee.

      As for Gabor's close family ties, these connections did not prevent him from committing the crimes for which he was convicted. *See United States v. Malquist,* 619 F. Supp. 875, 879 (D. Mo. 1985) (concern for supportive family did not prevent the defendant from committing the charged offenses and were not sufficient to support a finding that the defendant was not likely to flee). Nor did his devotion and concern for

4

family prevent him from engaging in such deceitful conduct as cheating on his wife, of which there was evidence offered at trial. In light of this evidence, the Court cannot conclude that his family ties would serve as any barrier to an attempt to flee.

The crimes for which Gabor was convicted involved fraudulent, dishonest, and obstructive conduct, which included falsifying evidence to thwart the FBI's investigation and destroying evidence implicating him and others in the RICO conspiracy. Evidence at trial established that this conduct did not involve a momentary lapse in judgment, but represented repeated, concerted acts over a number of years. *See United States v. Nicolo,* 706 F. Supp. 2d 330, 334 (W.D.N.Y. 2012) (defendant's deceitful and fraudulent behavior stretched over many years and demonstrated that he could not be trusted to abide by any conditions of release); *United States v. Davis*, 664 F. Supp. 2d 86, 90-91 (D.D.C. 2009) (agreeing with government's assertion that "defendant consistently lied" in the course of committing fraud offense); *United States v. Nouri*, 07 Cr. 1029 (DC), 2009 U.S. Dist. LEXIS 87781, at *5 (S.D.N.Y. Sept. 8, 2009) (noting that defendant "has engaged in dishonest and obstructive conduct" and has "committed fraud"). Gabor's actions over this time period were calculated to facilitate his role in the charged conspiracies, to benefit him and his co-conspirators, and to conceal such activity from the authorities. The Court believes that defendant Gabor would employ these same skills of deceit and evasion to elude capture. As was the case with his co-defendant, this level of dishonesty and deception, and the disdain Gabor has previously shown for the justice system, leaves the Court skeptical that he would abide by the terms and conditions of release.

The Court likewise gives little weight to the evidence that defendant Gabor complied with all pre-trial bond conditions, and appeared for all scheduled court proceedings. In rejecting a similar argument by co-defendant Dimora, the Court observed:

> "It is not unusual for persons seeking pre-sentence release to point to their *compliance* with pre-trial release orders as evidence that they will appear for sentencing." *United States v. Hanhardt*, 173 F. Supp. 2d 801, 806 (N.D. Ill. 2001) (emphasis in original), *rev'd in part on other grounds*, 361 F.3d 382 (7th Cir. 2004). "The argument is routinely rejected because prior to trial there is the possibility of no imprisonment, which evaporates upon a finding of guilt." *Id.* (citing *United States v. Manso-Portes*, 838 F.2d 889 (7th Cir. 1987)). Prior to trial, Dimora had adamantly proclaimed his innocence in the press, and had insisted that he would be exonerated at trial. Now that vindication is no longer a possibility, an important incentive for him to appear in court is gone. *See* [*United States v. Malquist*, 619 F. Supp. 875 (D. Mo. 1985)], (rejecting evidence of pre-trial appearance in court where defendant had previously appeared because he believed that he would prevail at trial); *see also United States v. Jinwright*, No. 3:09CR67-W, 2010 U.S. Dist. LEXIS 85677, at *18 (W.D.N.C. July 23, 2010) ("Something has changed since trial; Defendant is no longer presumed innocent but is guilty of the counts of conviction. His legal status has changed, increasing his incentive to flee.")

(Doc. No. 867, Page ID # 18053.)

The same analysis and conclusion applies to defendant Gabor. Like Dimora, defendant Gabor maintained his innocence throughout these proceedings. Having been divested of his presumption of innocence by virtue of the jury's guilty verdicts, defendant Gabor has lost the motivation to stay within the jurisdiction of this Court and fight the charges against him. At the age of 52, he now faces a drastic change in lifestyle in the form of a lengthy prison sentence, providing him with a strong incentive

to flee.[3] *See, e.g., United States v. Madoff,* 316 F. App'x 58, 59 (2d Cir. 2009) ("As to the incentive to flee (based on his age and exposure to a lengthy imprisonment), we consider that such an incentive naturally bears upon and increases the risk of flight."); *Nouri,* 2009 U.S. Dist. LEXIS 87781, at *5 (prospect of lengthy sentence of 20 years provided incentive to flee).

*Conclusion*

Taking into consideration all of the relevant factors, and accepting at face value Gabor's asserted ties to the community, close family relations, and compliance with pre-trial bond conditions, the Court finds that Gabor cannot satisfy the burden of demonstrating by clear and convincing evidence that he is not a flight risk. Therefore, defendant Gabor's motion for release pending sentencing is DENIED.

**IT IS SO ORDERED**.

Dated: June 21, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] The government observes that the present motion was filed two weeks after Gabor learned from government attorneys that the government believed that Gabor's total offense level, under the Sentencing Guidelines, fell between 32 and 36. While the timing of the present motion for release is certainly not dispositive, the Court is concerned that Gabor waited for more than two months before he filed the present motion, and did so only after he learned that he was facing a considerable prison sentence.