# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR387 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| JAMES C. DIMORA, *et al*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are several written requests by news organizations to release all exhibits admitted at trial in this matter but not previously released. (Doc. Nos. 1100, 1103.) Consistent with the Court's past practices dealing with such media requests, the parties were afforded a period of time in which to file objections. (*See* Doc. No. 1101.) Defendant Dimora has filed objections (Doc. No. 1102 (Dimora Objections ["Dimora Obj."])), while defendant Gabor has not registered any opposition to releasing the exhibits.[1] Because the time for filing objections has passed, the matter is ripe for resolution.

---

[1] Although the government did not respond to the Court's Order of October 8, 2015 (Doc. No. 1101), it previously indicated that it takes no position on the release of the exhibits, but would request two weeks from the date of any order authorizing the release of exhibits to make appropriate redactions. (Doc. No. 1079.)

## I. BACKGROUND

Former Cuyahoga County Commissioner James Dimora was indicted, along with former Cuyahoga County employee Michael Gabor and several other individuals, on multiple federal offenses resulting from an FBI investigation into suspected public corruption in Cuyahoga County. Dimora and Gabor were two of the nearly 60 individuals—including public officials, judges, and private citizens—who were charged as the result of the FBI's probe. Most of those arrested entered into plea agreements, while a few stood trial. Initially, there was significant public interest in these cases, but as time passed, public interest appears to have waned. There is no question that the present case received the most attention in the media as Dimora was one of the two highest-ranking public officials implicated in the federal investigation.

Defendants Dimora and Gabor went to trial in early 2012. During the trial, the Court took significant steps to ensure that the public would have the opportunity to attend the proceedings and the media would have the ability to hear the witness testimony, view the evidence as it was presented, and report on what they observed.[2] On March 9, 2012, following 37 days of trial, the jury returned guilty verdicts against Dimora and Gabor on all but a handful of counts.

Even before the jury was discharged, the Court began to receive inquires from the media regarding access to the over 1,200 exhibits admitted at trial. In an Opinion and Order, dated March 22, 2012, the Court addressed these initial requests, and familiarity with this

---

[2] The Court will not take time to recount the many accommodations afforded the public and the media during the 2012 trial, as such efforts were discussed in detail in the Court's March 22, 2012 Opinion and Order. (Doc. No. 763 at 17337-40.) Suffice it to say, the Court made every effort to ensure that any member of the public or media that wished to attend the proceedings and view the exhibits at trial could do so.

decision is presumed. (Doc. No. 763.) Briefly, the Court weighed the competing interests before determining that it would release some, but not all, of the requested materials at that time. Weighing in favor of immediate release of the exhibits were the public's interest in the trial, the sheer volume of exhibits offered at trial, and the opportunity to increase the depth of public knowledge of the case and the underlying public corruption investigation. Balanced against these interests were the anticipated post-trial motions and appeals by Dimora and Gabor, the fact that Dimora was also a defendant in a related criminal case then-pending before the Court, and the existence of the then-still active criminal cases of many of the defendants' alleged co-conspirators and other related cases stemming from the same investigation.

While the Court determined that this balancing supported the release of certain categories of exhibits, it concluded that "the Court must exercise its duty to restrict access—at least temporarily—to certain types of exhibits in order to ensure that the due process rights of those involved in this case and related cases are protected." (Doc. No. 763 at 17345 (citing *United States v. Beckham*, 789 F.2d 401, 415 (6th Cir. 1986).) Included among the exhibits temporarily withheld from public dissemination were hundreds of recordings (and transcripts) of conversations between defendants and certain co-conspirators. The Court emphasized that the "delay in release of the recordings and transcripts is just that—a delay. Once judicial proceedings relevant to this investigation and these exhibits have been concluded, little will stand in the way of unfettered access to these records." (*Id*. at 17358.)

Defendant Dimora was sentenced by this Court on August 1, 2012 (Doc. No. 957), and defendant Gabor was sentenced on August 14, 2012. (Doc. No. 974.) Both defendants filed direct appeals, and the Sixth Circuit affirmed their convictions and sentences in a decision dated April 30, 2014. *See United States v. Dimora*, 750 F.3d 619 (6th Cir. 2014). Each defendant

also sought certiorari review by the United States Supreme Court. Dimora's request for review was denied on October 6, 2014 (Doc. No. 1080), and Gabor's request was denied on November 10, 2014. (Doc. No. 1085.)

The day after defendant Dimora was denied certiorari review, the Court received another media request for the release of all previously unreleased evidentiary materials. (Doc. No. 1077.) While the Court indicated that it was "inclined to release all properly redacted copies of trial exhibits" now that defendant Dimora's conviction was final, the Court afforded all interested parties leave to file objections. (Doc. No. 1078.) Defendant Dimora filed an objection, citing the fact that he intended to pursue a collateral attack of his conviction and sentence, pursuant to 28 U.S.C. § 2255. (Doc. No. 1081.) In light of Dimora's anticipated petition, the Court ruled that it would not, at that time, authorize the release of any trial exhibits that had not already been released. (Doc. No. 1083.)

The most recent round of media requests has come approximately one year after the Supreme Court denied Dimora's petition for certiorari review. A one-year period of limitation applies to motions to vacate, set aside, or correct a sentence, pursuant to 28 U.S.C. § 2255. For purposes of the present case, that one-year time period runs from the date on which each judgment of conviction became final—namely, the date the Supreme Court denied discretionary review. 28 U.S.C. § 2255(f)(1); *see Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001) (citation omitted).

## II. APPLICABLE LAW AND ANALYSIS

The Court set forth the law governing media requests to inspect and copy trial exhibits in its March 22, 2012 Opinion and Order and will not recite that law in full again, though it still guides the Court's analysis. For purpose of framing the present requests, it is sufficient to note that, where, as here, the public and the media were given full access to the information contained in exhibits when those exhibits were presented at trial, there is no constitutional right to inspect and copy those exhibits. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 610, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *Beckham*, 789 F.3d at 411, 414-15 (specifically addressing the right to inspect and copy tape-recordings). Rather, this right flows from common law, and while there is a presumption in favor of disclosure, this common law right must at times give way to other important considerations, such as the protection of a litigant's constitutional rights. *Application of Nat'l Broadcasting Co., Inc.*, 635 F.2d 945, 950 (2d Cir. 1980) (citing *Warner Commc'ns*, 435 U.S. at 598) (quotation marks and further citations omitted)); *see Beckham*, 789 F.2d at 409, 413 (citation omitted).

The trial court is tasked with the responsibility of balancing the factors militating for and against allowing the exhibits to be inspected and copied, and the court is afforded considerable discretion in performing this analysis. *See Beckham*, 789 F.2d at 415 ("[T]he primary responsibility for the orderly administration of a criminal trial rest[s] on [the] shoulders [of the trial court]."); *see also Warner Commc'ns*, 435 U.S. at 598 ("Every court has supervisory power over its own records and files, and access [may be] denied when court files might . . . become a vehicle for improper purposes.") Thus, the Court must, once again, balance the competing interests.

Much has changed since the Court first contemplated the release of the trial exhibits, and the Court is satisfied that many of the factors counseling against release are no longer considerations. For example, the second indictment against defendant Dimora was dismissed prior to sentencing in this case. Additionally, all of Dimora's alleged co-conspirators have either gone to trial or entered guilty pleas and have been sentenced. Finally, Dimora's conviction became final on October 6, 2014, and, barring any tolling arguments, his time to file a § 2255 motion expired on October 6, 2015.[3]

On the other side of the equation, many of the factors favoring immediate release are present. The trial in this case, and the underlying federal investigation, involved allegations of public corruption, and the public has an obvious interest in the operation of its local government, the form of which the citizens of Cuyahoga County have changed since the federal investigation was made public. *See Beckham*, 789 F.2d at 413 (citing *United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981)). Release of the exhibits will help the public to understand the breadth and depth of this corruption in the local government and more fully appreciate the need for criminal sanctions. Release will also serve as a reminder to the public of the need for vigilant monitoring of the conduct of those entrusted to serve the public. Also, given the sheer volume of exhibits in this case, permitting the media to inspect and copy the exhibits will assist them in effectively digesting and disseminating this information to the public in a coherent manner.

---

[3] Most notably, in his objections, Dimora no longer makes reference to a § 2255 motion and appears to have abandoned this potential avenue of review.

In his objections, defendant Dimora complains that the "media would only be able to use the phone calls to perform character assassination on [him] and to humiliate/punish his family." (Dimora Obj. at 31506.) He also predicts that "the media's tendency to sensationalize for entertainment value could adversely affect [his] petition for commutation of sentence." (*Id.*) But Dimora's request for executive clemency does not raise the same concerns as a criminal appeal, which, if successful, could result in a new trial. A pardon or commutation of sentence would not require a second trial where there would be a fear that the jury pool could be tainted by the publication of the trial exhibits.

The Court acknowledges Dimora's concern that there is a risk that the exhibits—especially the wiretaps—could be misused for the improper motives of "promoting public scandal or gratifying private spite." *See Beckham*, 789 F.2d at 409 (citing *Warner Commc'ns*, 435 U.S. at 599-603). Still, the media's past coverage of this case was both responsible and professional, and members of the media have indicated that they desire the release of the exhibits for the legitimate purpose of educating the public on the depth and breadth of the charged public corruption. The Court trusts that the media will continue to report on this case in a professional and dignified manner.

It is true that defendant Gabor has also indicated that he intends to file a § 2255 motion, and it appears from the record that he still has time to do so. (*See* Doc. Nos. 1092, 1097, and 1099.) Gabor was implicated in fewer fraudulent schemes than Dimora, and the vast majority of the trial exhibits did not involve his activities. He also received much less attention in the media during the 2012 trial, and, in light of his more limited role in the charged conspiracy, it is unlikely that he will be the focus of future coverage. Should he prevail on his collateral appeal,

the Court is confident that Gabor's constitutional right to a fair trial can be preserved by careful voir dire of the jury panel. *See generally Beckham*, 789 F.2d at 414 (citation omitted).

Given the present circumstances, the competing factors now favor release of the trial exhibits. Within 14 days of the date of this opinion, the government is hereby instructed to review the previously unreleased exhibits and redact sensitive, personal information of any individual, in accordance with Fed. R. Crim. P. 49.1. After the expiration of the time set aside for redaction, members of the media may contact the United States Attorney's Office to make arrangements to obtain copies of properly redacted trial exhibits.

**IT IS SO ORDERED**.

Dated: October 23, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**